# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### GREAT FALLS DIVISION

| | |
|---|---|
| LAURENCE STEWART,<br><br>    Plaintiff,<br><br>  vs.<br><br>MR. BERKEBILE, MS. ARNOLD,<br>MR. SPIEGLE, MR. WEAVER,<br>MIKE BATISTA, LORAINE<br>WODNIK, and COLLEEN<br>AMBROSE,<br><br>    Defendants. | CV-15-89-GF-BMM<br><br><br><br>**ORDER** |

## INTRODUCTION

United States Magistrate Judge John Johnston entered Findings and

Recommendations on August 30, 2018, on the following motions: Defendants

Colleen Ambrose, Mike Batista, and Loraine Wodnik's ("State Defendants")

Motion for Summary Judgment (Doc. 70); Stewarts's Motion for Summary

Judgment (Doc. 76); Defendants Mr. Berkebile, Ms. Arnold, Mr. Spiegle, and Mr.

Weaver's ("CCA Defendants") Motion for Summary Judgment (Doc. 80); and

Stewart's Motion for Protective Order (Doc. 100). (Doc. 104.) Stewart filed a

Motion for Extension to File Objection to Findings and Recommendations on

September 19, 2018. (Doc. 106.) Stewart further filed a Revised Motion for Extension of Time to File Objection to Findings and Recommendations on September 24, 2018. (Doc. 107.) Stewart also filed a Motion for Investigation and Sanctions on October 1, 2018. (Doc. 111.)

## BACKGROUND

Montana State Prison ("MSP") Warden Leroy Kirkegard served Stewart a memorandum in regard to Stewart's abuse of the grievance procedure on May 27, 2015. (Doc. 77-1 at 1.) The memorandum notified Stewart that an abuse of the grievance procedure "may include, but is not limited to, use of profanity, threats, abusive or demeaning language; submitting an excessive number of grievances; or, submitting multiple grievances in reference to the same issues." *Id*. The memorandum explained that Stewart's past and current grievances demonstrated "a pattern of abusive and demeaning language, condescending comments, issues that have been previously addressed, and grievances where [Stewart] attempt[ed to] use the process in a retaliatory manner when [Stewart] disagree[d] with a prior level response." *Id*. The memorandum warned Stewart that future or current grievances that continued to demonstrate this "pattern of abuse of the grievance procedure [would] be returned to [Stewart] unanswered and may result in further restrictions per MSP 3.3.3." *Id*. at 3.

Stewart was transferred from MSP to Crossroads Correctional Center ("CCC") on June 9, 2015. (Doc. 72-3 at 1.) Stewart filed an Informal Resolution Form at CCC on July 2, 2015. (Doc. 77-1 at 5.) Stewart's Informal Resolution Form, however, was directed to MSP staff. *Id*. Stewart's Informal Resolution Form provided as follows:

> I found a very interesting case: Brodheim v. Cry 584 F.3d 1262 (9th Cir. 2009). Please read this case. It states that an I/M cannot be punished for hostile, abusive, threatening or sexual language in a grievance. This is the law. All of those grievances not processed and my "restriction" was all illegal. Now I know I can say that the warden is a little bitch who is too afraid to come to the high side and confront me like a man. He knows if he came to the high side, someone would probably punch him in that stupid fucking mouth of his. Anyone else who follows the warden's illegal instructions is a cunt. A dirty diseased cunt, to be more accurate. To the warden, I am only glad I am not black or you racist sheep fucking hicks would really be giving me the shaft. Start doing your job and stop looking for reasons to not process grievances based solely on the fact I called you mean names. Grow up.

*Id*. Stewart wrote the following in the "Action Requested" section of his Informal Resolution Form: "Please learn the fucking law and follow it. Stop being childish uneducated hicks and investigate issues even if they are presented to you in a less than robotic way. ~~Cunt Cunt Cunt Cunt~~." *Id*.

Stewart received a Disciplinary Infraction Report/Notice of Hearing ("Disciplinary Infraction Report") from CCC Grievance Coordinator Arnold on July 2, 2015. (Doc. 77-1 at 9.) The Disciplinary Information Report charged Stewart with violating Rule No. 4235. *Id*. Rule 4235 provides as follows:

"Threatening any other person to include, staff, volunteers, visitors, vendors, members of the public, etc. with bodily harm. Verbal or written statements or engaging in physical conduct causing fear in another person." *Id*. Defendant Weaver determined that Stewart had violated Rule 4235. (Doc. 104 at 7.) Weaver sentenced Stewart to twenty days disciplinary detention with time served. *Id*. Stewart filed a disciplinary appeal on July 7, 2015. *Id*. CCC affirmed Weaver's decision. *Id*. at 8.

CCC placed Stewart on a grievance restriction on July 10, 2015. *Id*. The notice of grievance restriction stated:

> You were under a grievance restriction while at MSP. According to MSP Policy 3.3.3 when an inmate is transferred while on a grievance restriction, the new facility at which they arrive can decide to continue or discontinue that restriction. We have decided to continue that grievance restriction. This means that: You are on a grievance restriction until further notice; all grievances that you file will not be processed due to the restriction.

(Doc. 77-1 at 28.) CCC subsequently returned several unprocessed informal resolution forms to Stewart. (Doc. 104 at 8.)

Stewart's infraction imposed by CCC increased Stewart's custody level to maximum. *Id*. Stewart was transferred back to MSP on August 25, 2015. *Id*. Stewart filed his Complaint on October 6, 2015. (Doc. 2.) Stewart ultimately alleges that the CCA Defendants and the State Defendants violated Stewart's right to free speech and right to access the courts when the Defendants placed Stewart on a grievance restriction. *Id*. at 8.

## DISCUSSION

### I. Findings and Recommendations

Judge Johnston determined that the action by CCA Defendants and State Defendants (collectively "Defendants") to discipline Stewart based on his written grievance failed to constitute a violation of Stewart's First Amendment rights. (Doc. 104 at 20.) Judge Johnston further concluded that Defendants are entitled to qualified immunity even if Defendants violated Stewart's constitutional rights. *Id.* at 23. Judge Johnston likewise determined that even if Defendants action in placing Stewart on a grievance restriction violated Stewart's First Amendment rights, the Defendants still would be entitled to summary judgment on the basis of qualified immunity. *Id.* Judge Johnston recommended that this Court grant both the State Defendants' Motion for Summary Judgment and the CCA Defendants' Motion for Summary Judgment. *Id.* at 30. Judge Johnston recommended that this Court deny Stewart's Motion for Summary Judgment and Stewart's Motion for Protective Order. *Id.*

CCA Defendants timely filed an objection to a limited portion of Judge Johnston's Findings and Recommendations on September 12, 2018. (Doc. 105.) Stewart likewise timely filed his objections to Judge Johnston's Findings and Recommendations on October 1, 2018. (Doc. 110.)

The Court reviews de novo Findings and Recommendations to which a party timely objects. 28 U.S.C. § 636(b)(1). A party makes a proper objection by identifying the parts of the magistrate's disposition that the party finds objectionable, and presenting legal argument and supporting authority, such that the district court is able to identify the issues and the reasons supporting a contrary result." *Montana Shooting Sports Ass'n v. Holder*, 2010 WL 4102940, at *2 (D. Mont. Oct. 18, 2010) (citation omitted).

The Court reviews findings and recommendations to which no party objects for clear error. *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). Clear error exists if the Court is left with a "definite and firm conviction that a mistake has been committed." *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000) (citations omitted).

**A. Summary Judgment Standard**

A party may move for summary judgment on all or part of a claim. Fed. R. Civ. P. 56(a). If no genuine dispute of material fact exists, then summary judgment is proper, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court will grant summary judgment where the documentary evidence produced by the parties only permits one conclusion. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986).

A moving party, who does not carry the burden of proof at trial, carries the "initial burden of production" on a summary judgment motion. *Nissan Fire & Marine Insurance Company, LTD v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (2000). The movant may fulfill her initial burden of production in one of two ways. *Id.*, at 1106. The movant may produce "affirmative evidence negating an essential element of the nonmoving party's claim." *Id.*, at 1103. The movant alternatively may show that the "nonmoving party did not have enough evidence to carry" her burden of proof at trial. *Id.* If the movant meets her burden of production, the nonmovant must produce evidence to support her claim. *Id.* Rule 56 mandates summary judgment where the nonmovant's production of evidence fails to create a genuine issue of material fact. *Id.* If the movant fails to meet her initial burden of production, then the nonmovant may defeat the motion for summary judgment without producing any evidence. *Id.*

## B. First Amendment Analysis

Judge Johnston correctly stated that Stewart must satisfy the following five elements to assert a viable First Amendment retaliation claim: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) that action did not reasonably advance a

legitimate correctional goal." (Doc. 104 at 10) (citing *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)).

Judge Johnston determined that Stewart satisfied the first, second, and fourth elements of the *Rhodes* test. (Doc. 104 at 10-11, 14.) The Court will review for clear error Judge Johnston's analysis on the first, second, and fourth elements of the Rhodes test. *See McDonnell Douglas Corp.*, 656 F.2d at 1313. The Court finds no error and will adopt Judge Johnston's reasoning on those three factors.

Judge Johnston determined, however, that Stewart had failed to satisfy the third and fifth elements of the *Rhodes* test. (Doc. 104 at 14, 20.) Stewart objects only to Judge Johnston's determinations on those elements. (Doc. 110 at 6-11.) The Court will review de novo Judge Johnston's findings on the protected conduct and legitimate correctional goal elements of the *Rhodes* test. *See* 28 U.S.C. § 636(b)(1).

### i.    Element Three: Protected Conduct

Judge Johnston determined that Stewart's claim failed to satisfy the protected conduct element of the *Rhodes* test. (Doc. 104 at 11.)  Judge Johnston reasoned that the language found in Stewart's grievance constituted a threat and, as such, was not protected by the First Amendment. *Id*. Stewart argues that Judge Johnston arbitrarily determined that Stewart's grievance failed to constitute protected conduct under the First Amendment. (Doc. 110 at 6.)

Stewart claims that his grievance does not meet the definition of a true threat. *Id*. Stewart contends that the language in his grievance proves comparable to the language at issue in *United States v. Bagdasarian*, 652 F.3d 1113 (9th Cir. 2011). Stewart argues that Judge Johnston would not have found that Stewart's grievance constituted a true threat if Judge Johnston would have analyzed properly Stewart's statements and the case law. (Doc. 110 at 7.)

The First Amendment pervades prison walls as they "do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987). The First Amendment "right to file prison grievances" stands among the various rights that inmates retain. *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003). "[P]rison officials may not punish an inmate merely for using 'hostile, sexual, abusive or threatening' language in a written grievance." *Brodheim*, 584 F.3d at 1282. The Ninth Circuit has noted, nonetheless, that "there may be situations in which prison officials properly discipline inmates for criminal threats contained in written grievances." *Id*.

True threats, however, stand outside the purview of the First Amendment. *Virginia v. Black*, 538 U.S. 343, 359 (2003). "'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Id*. "The speaker need not actually intend to carry out the threat." *Id*.

at 359-60. A prohibition on true threats seeks to protect individuals "from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur." *R.A.V. v. City of St. Paul, Minnesota*, 505 U.S. 377, 388 (1992).

An objective standard governs true threats. *See United States v. Orozco-Santillan*, 903 F.2d 1262, 1265 (9th Cir. 1990), *overruled in part on other grounds by United States v. Hanna*, 293 F.3d 1080, 1088 n.5 (9th Cir. 2002). A statement constitutes a true threat if "a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault." *Orozco-Santillan*, 903 F.2d at 1265. Judge Johnston, in making his determination, juxtaposed the language in Stewart's grievance with the language of the grievances in both *Bradley v. Hall*, 64 F.3d 1276 (9th Cir. 1995), and in *Brodheim*. (Doc. 104 at 12-13.)

Brodheim submitted an "inmate request for interview" that stated as follows:

This is not a "staff complaint"—any more than was my appeal involving C/O Lindstrom. I am requesting information (see part B). Any misconduct by C/O Hearsum or C/O Hernandez was incidental to the "story." I want to know why I could not walk thru Unit I and I think I'm entitled to an answer.

You're such a "stickler" for the rules as *you* "see" them. Why not teach staff that they are *required* to respond informally to 602's w/in 10 working days—or is it your position that Title 15 applies only "against" inmates? Or, is it your position that I am not entitled to the information I request? What exactly *is* your position, Mr. Cry—obstruct 602's at all costs? ? ?
This appeal was *timely* submitted to C/O Hearsum w/in 15 working days. (See my 6/18 note.)

Thank you for your cooperation.

*Brodheim*, 584 F.3d at 1265 (emphasis in original).

Bradley's grievance included similar language as the language in Brodheim's grievance. Bradley's grievance submitted to the prison guard's superior provided as follows:

> Her [the guard's] actions shows her misuse of her authority and her psychological disorder needs attention. Then you wonder why things happen like that guard getting beat down? I suggest you talk to this woman and have her act professional instead of like a child.

*Bradley*, 64 F.3d at 1278.

Judge Johnston ultimately determined that Stewart's grievance proved distinguishable from the grievances at issue in *Bradley* and *Brodheim*. Judge Johnston discerned that Stewart, unlike Bradley and Brodheim, "surrounded his threats with profanity and obscenities to such an extent that it was reasonable to construe the language [in the grievance] as a true threat." (Doc. 104 at 14.)

Judge Johnston correctly noted that the language in *Brodheim* and *Bradley* proved distinguishable from the language in Stewart's grievance as Stewart's grievance involved sexually explicit language and profanity. Sexually explicit or profane language, by itself, however, fails to exist as a touchstone of the First Amendment true threats analysis. *See Brodheim*, 584 F.3d at 1271 (citing *Bradley*, 64 F.3d at 1281-82) ("disrespectful language in a prisoner's grievance is itself protected activity under the First Amendment"). Stewart's grievance, taken as a

whole, must demonstrate "a serious expression of intent to commit an act of unlawful violence." *See Virginia*, 538 U.S. at 359. And a reasonable person must foresee that the language in Stewart's grievance would be interpreted by the MSP Warden as a "serious expression to harm or assault." *See Orozco-Santillan*, 903 F.2d at 1265.

A reasonable person would not foresee that Stewart's grievance would be construed as a serious expression to harm or assault MSP Warden Kirkegard. Stewart stated: "Now I know I can say that the warden is a little bitch who is too afraid to come to the high side and confront me like a man. He knows if he came to the high side, someone would probably punch him in that stupid fucking mouth of his." (Doc. 77-1 at 5.) Stewart's language fails to rise to the level of a "serious expression of an intent to commit an act of unlawful violence" to the Warden Kirkegard. *Virginia*, 538 U.S. at 359.

Stewart never stated that he would punch Warden Kirkegard "in that stupid fucking mouth of his." *See* (Doc. 77-1 at 5.) Stewart likewise did not encourage others to punch Warden Kirkegard in the mouth. *See id.* In fact, Stewart's grievance was viewed only by Stewart and those involved in the grievance process. *See id.* at 9. Stewart instead merely observed that if Warden Kirkegard came to the high side that a possibility existed that an inmate would punch Kirkegard on his own volition. *See id.* at 5. Stewart's language in his grievance did not rise to the

level of a true threat. Stewart's language in his grievance—though admittedly coarse and offensive—proves entitled to First Amendment protection. *See Brodheim*, 584 F.3d at 1282.

###     ii.    Element Five: Legitimate Correctional Goal

CCC disciplined Stewart for violating Rule 4235. (Doc. 104 at 15.) CCC issues a Rule 4235 citation to an inmate for "[t]hreatening any other person to include staff, volunteers, visitors, vendors, member of the public, etc. with bodily harm. Verbal or written statements or engaging in physical conduct causing fear in another person." (Doc. 72-5 at 13.) Judge Johnston determined that Rule 4235, on its face, "reasonably advances a legitimate correctional goal." (Doc. 104 at 15.) Judge Johnston likewise concluded that Rule 4325, as applied to Stewart, proved "reasonably related to legitimate penological interests." *Id*. at 17.

Stewart asserts that Rule 4235 fails to advance a legitimate penological interest because Rule 4235 penalizes speech that proves protected by the First Amendment. *Id*. at 9. Stewart maintains that Rule 4325 fails to "define the elements of a threat," and that this failure allows correction officers to decide arbitrarily the meaning of a threat. *Id*. Stewart concedes that punishing an inmate for "true threats" under the "legal definition" would be constitutional. *Id*. Stewart argues that using Rule 4235 to penalize speech that is "anything less than a true threat" would be unconstitutional. *Id*. Stewart ultimately contends that Judge

Johnston's determination that Rule 4235 proves reasonably related to legitimate penological interests conflicts with Ninth Circuit case law. *Id*. at 10.

A prison regulation that infringes on an inmate's First Amendment rights remains constitutional so long as the regulation "is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. The Supreme Court has laid out four factors relevant in determining whether the regulation at issue proves reasonable. *Id.* "First, there must be 'valid, rational connection' between the prison regulation and the legitimate [and neutral] interest put forward to justify it." *Id.* at 89-90 (quoting *Block v. Rutherford*, 468 U.S. 576, 586, 104 S. Ct. 3227, 3232 (1984)). Second, the Court should determine "whether there are alternative means of exercising the right that remain open to prison inmates." *Turner*, 482 U.S. at 90. Third, the Court should evaluate "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally.*" Id.* Fourth, whether ready alternatives exist. *Id.* at 90-91.

The Ninth Circuit in *Bradley* determined that the rule at issue failed to satisfy the first factor of the *Turner* test. 64 F.3d at 1281. Bradley was cited for using disrespectful language in his grievance. *Bradley*, 64 F.3d at 1278. The citation proclaimed that Bradley's grievance violated a rule that prohibits directing "hostile, sexual, abusive or threatening language or gestures, verbal or written

toward another person." *Id.* (citing Or. Admin. R. 291-105-015(2)(g)). The Ninth Circuit acknowledged that the prison possessed a "valid interest in the peaceable operation of the prison through the insistence on respect, rather than through violent confrontation." *Id.* at 1281. The Ninth Circuit reasoned, however, that "the link between this important purpose and the disrespect rules as applied to formal written grievances is weak." *Id.* The Ninth Circuit, in its review of *Bradley* in *Brodheim*, determined that prison rules that penalize disrespectful language in grievances fail to advance legitimate penological interests. *Brodheim*, 584 F.3d at 1273.

Rule 4235 proves distinguishable from the disrespect rule at issue in *Bradley*. Rule 4235, on its face, prohibits an inmate from "[t]hreatening any other person to include staff, volunteers, visitors, vendors, members of the public, etc. with bodily harm. Verbal or written statements or engaging in physical conduct causing fear in another person." (Doc. 72-5 at 13.) Rule 4235 equally does not punish inmates simply for using disrespectful language. *See id.* The Court must determine, therefore, whether Rule 4235's ban on threatening language proves rationally related to legitimate penological interests. *See Turner*, 482 U.S. at 89.

Rule 4235 satisfies the *Turner* test. Defendants assert that "allowing inmates to threaten prison staff would interfere with staff's ability to perform their jobs, impact staff and resource allocation, put staff and inmates at risk, and directly

contradict [the Department of Corrections's] goal of rehabilitation." (Doc. 104 at 16) (citing Doc. 72 at ¶ 70.) Defendants' desire to protect prison staff from inmates constitutes a legitimate and neutral governmental interest. Defendants' interest proves rationally connected to Rule 4235's ban on inmates use of threatening language directed at prison staff.

The Court likewise determines that Rule 4235 provides for alternative means for inmates to exercise their First Amendment rights as Rule 4235 prohibits only threatening speech. *See* (Doc. 72-5 at 13.) Rule 4235's penalization of threatening speech also stands to benefit other inmates, the guards, and prison resources. *See* (Doc. 72 at 11-12.) Finally, no other ready alternatives prove available to achieve Defendants' stated objectives. *See id.* at 12. Threats must be judged by an objective standard. *See Orozco-Santillan*, 903 F.2d at 1265. As such, the legitimate security concerns created by grievances that contain threatening language cannot be served by procedures that would allow the threatened prison employee to be shielded from the grievance. *See Bradley*, 64 F.3d at 1281 ("legitimate security concerns would be largely served by procedures that require grievances to be in writing and shield those prison officials who are in direct contact with the inmates from reading any insulting remarks that might be contained in those grievances.") Rule 4235 proves constitutional on its face.

The Court affirms Judge Johnston's conclusion that Rule 4235, on its face, proves constitutional. *See* (Doc. 104 at 17.) The Court disagrees with Judge Johnston's determination, however, that Rule 4235 remains constitutional as applied to Stewart. *See id.* As the Court noted above, the language in Stewart's grievance failed to rise to the level of threatening language. Rule 4235 as applied to Stewart's grievance represents an "exaggerated response" to furthering the prison's legitimate penological interest in maintaining the safety of its employees. *Bradley*, 64 F.3d at 1280. Rule 4235 proves unconstitutional as applied to the language in Stewart's grievance.

## C. Qualified Immunity

Judge Johnston determined that State Defendants and CCA Defendants proved entitled to qualified immunity even if Stewart's First Amendment rights were violated by being punished pursuant to Rule 4235 and by being placed on a grievance restriction. (Doc. 104 at 23.)

CCA Defendants object to the qualified immunity portion of Judge Johnston's Findings and Recommendations on the basis that the law precludes CCA Defendants from the protection of qualified immunity. (Doc. 105 at 2.) CCA Defendants request that this court modify pages twenty through twenty-seven to reflect that only State Defendants prove entitled to qualified immunity. *Id.* at 3.

CCA Defendants still maintain, nonetheless, that they remain entitled to summary judgment. *Id.*

Stewart likewise contends that CCA Defendants are not entitled to qualified immunity. (Doc. 110 at 12.) Stewart asserts that what constitutes a criminal threat proves clearly established under First Amendment precedent. *Id.* at 12-13. Stewart also contends that *Brodheim* and *Bradley* clearly prove that the grievance restriction placed on Stewart was unconstitutional. *Id.* at 15.

## i.    State Defendants

Qualified immunity seeks to balance two competing interests: (1) the interest in holding "public officials accountable when they exercise power irresponsibly;" and (2) the interest in shielding "officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Government officials may invoke qualified immunity upon satisfaction of the following two prongs: (1) "whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right;" and (2) "whether the right at issue was clearly established at the time of the defendant's alleged

misconduct." *Saucier v. Kantz*, 533 U.S. 194, 201 (2001). The Court possesses the discretion to decide which of the *Saucier* prongs "should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

Whether a right proves clearly established "turns on the objective reasonableness of the action, assessed in the light of the legal rules that were clearly established at the time it was taken." *Id*. at 244 (internal quotations and citations omitted). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 463 U.S. 635, 640 (1987). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231 (internal quotations and citation omitted).

CCC cited Stewart for violating Rule 4235 for using threatening language towards MSP Warden Kirkegard in Stewart's Informal Resolution Form while incarcerated at CCC. (Doc. 77-1 at 5, 7.) Stewart alleges that he was cited for using language in his Informal Resolution Form that proved protected by the First Amendment as Stewart's language failed to rise to the level of a true threat. (Doc. 110 at 10.) As noted by the Court above, Stewart was punished under Rule 4235 for using sexually explicit language and profanity rather than for making a true threat. The facts at issue make out a violation of Stewart's First Amendment rights.

Stewart's First Amendment rights likewise were clearly established at the time Stewart filed his Informal Resolution Form. [T]he prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit." *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). The Ninth Circuit likewise clearly established that "prison officials may not punish an inmate merely for using hostile, sexual, abusive or threatening language in a written grievance." *Bradley*, 64 F.3d at 1282 (internal quotations omitted).

The Ninth Circuit has yet to clearly establish, however, whether "prison officials may properly discipline inmates for criminal threats contained in written grievances." *Id*. at 1281-82. Given that the Ninth Circuit has prohibited prison officials from punishing inmates for using "hostile, sexual, abusive or threatening language in a written grievance," no reasonable prison official could believe that the language in Stewart's grievance was not protected by the First Amendment. *Bradley*, 64 F.3d at 1282. Qualified immunity, nonetheless, covers "mere mistakes in judgement, whether the mistake is one of fact or one of law." *Butz v. Economou*, 438 U.S. 478, 507 (1978). State Defendants prove entitled to the protections of qualified immunity in regard to punishing Stewart for the language in his Informal Resolution Form.

State Defendants equally prove entitled to qualified immunity for imposing a grievance restriction on Stewart. MSP placed Stewart on a grievance restriction

pursuant to MSP 3.3.3 which provides as follows: "Abuse of the grievance procedure by an inmate may include, but is not limited to, the use of profanity, threats, abusive or demeaning language; submitting an excessive number of grievance forms; or, submitting multiple grievances in reference to the same issue(s). (Doc. 72-8 at 9.) State Defendants notified Stewart that his grievances would not be processed if they continued to demonstrate an abuse of the grievance process. (Doc. 77-1 at 1-2.)

The Ninth Circuit recently established that a prison official's refusal to process a grievance that failed to conform to the official's "personal conception of acceptable content" constituted "content-based discrimination that runs contrary to First Amendment protections." *Richey v. Dahne*, 733 Fed. Appx. 881, 883-84 (9th Cir. 2018). The First Amendment prohibits State Defendants from refusing to process grievances because the language in the grievances fails to conform to the prison's conception of acceptable content. *See Richey*, 733 Fed. Appx at 883-84. The Ninth Circuit did not clarify this prohibition, however, until 2018. *See Richey*, 733 Fed. Appx at 881. State Defendants placed Stewart on a grievance in May of 2015. (Doc. 77-1 at 1.) Qualified immunity protects State Defendants.

## ii.      CCA Defendants

Private prison guards, unlike government prison guards, may not invoke qualified immunity. *Richardson v. McKnight*, 521 U.S. 399, 412 (1997). The

Supreme Court has yet to "express a view" on whether private defendants prove entitled to such defenses in lieu of qualified immunity. *Richardson*, 521 U.S. at 414. The Supreme Court has noted, nonetheless, that there exists a "possibility that private defendants faced with § 1983 liability . . . could be entitled to an affirmative defense based on good faith and/or probable cause." *Id*. at 413 (citing *Wyatt v. Cole*, 504 U.S. 158, 169 (1992)).

The Ninth Circuit in *Clement v. City of Glendale*, 518 F.3d 1090, 1097 (9th Cir. 2008), determined that a private towing company could assert a good faith defense. The police department in *Clement* authorized Monterey Tow Service to tow Virginia Clement's 1981 Cadillac Eldorado Biarritz from a hotel parking lot. 518 F.3d at 1092.

Clement had filed a "planned non-operation" certificate ("PNO") with the California Department of Motor Vehicle. *Clement*, 518 F.3d at 1092.The PNOs "allow vehicle owners to avoid paying for registration and insurance, so long as they don't drive on public roads or park in publicly accessible parking lots." *Id*. (citation omitted). The police officer ordered Clement's vehicle towed as her vehicle's registration had expired and the officer believed that the vehicle was parked in a publicly accessible parking lot. *Id*. The Ninth Circuit reasoned that Monterey Tow Service "did its best to follow the law and had no reason to suspect that there would be a constitutional challenge to its actions." *Id*. at 1097.

CCA Defendants, as employees of a private prison, concede that they are not entitled to qualified immunity. (Doc. 105 at 2.) CCA Defendants maintain, however, that an award of summary judgment in their favor remains appropriate. *Id*. CCA Defendants argue they are entitled to assert a good faith defense of the type recognized by the scenario in *Clement*. *See id.*

CCA Defendants prove entitled to assert a good faith defense for their placement of Stewart on a grievance restriction when Stewart was transferred to CCC. Stewart was placed on a grievance restriction pursuant to MSP 3.3.3. while he was incarcerated at MSP. (Doc. 77-1 at 1-2.) CCA Defendants, in July of 2015, continued Stewart's grievance restriction, as authorized by MSP 3.3.3. *Id*. at 28. The Ninth Circuit determined in 2018 that prison officials were barred from refusing to process grievances based on their content. *See Richey*, 773 Fed. Appx. at 883-84. CCA Defendants "did [their] best to follow the law and had no reason to suspect that there would be a constitutional challenge to [their] actions." *Clement*, 518 F.3d at 1097. A good faith defense shields CCA Defendants from liability to Stewart's claim that CCA Defendants' action in placing Stewart on a grievance restriction violated his First Amendment rights.

It remains unclear on the record before the Court, however, as to whether CCA Defendants may shield themselves from liability by having established a good faith defense to their actions in sanctioning Stewart under Rule 4235. The

Court will defer a decision on this issue. CCA Defendants shall file a supplemental brief, and accompanying affidavits, within thirty days of the date this order is filed. Stewart shall have thirty days from receipt of CCA Defendants' supplemental brief to respond with his own brief and accompanying affidavits.

### D. Motion for Protective Order

Judge Johnston determined that Stewart's Motion for Protective Order (Doc. 100) should be denied. (Doc. 104 at 29.) Neither party filed objections. The Court will review for clear error. *See McDonnell Douglas Corp.*, 656 F.2d at 1313. The Court finds no error and adopts in full Judge Johnston's Findings and Recommendations on Stewart's Motion for Protective Order.

### II. Motion for Investigation and Sanctions

Stewart requests that the Court "investigate and deliver appropriate sanctions/ discipline" to Judge Johnston and "anyone else responsible for writing/ preparing" Judge Johnston's Findings and Recommendations. (Doc. 111.) Stewart contends that sanctions prove appropriate "due to a clear lack of due diligence in citations and research and a biased analysis in clear opposition to established law." *Id*. CCA Defendants argue that Stewart's motion proves frivolous as it stands barred by judicial immunity. (Doc. 112 at 1-2.)

Judicial immunity shields judges from liability "for acts within the judicial role." *Pierson v. Ray*, 366 U.S. 547, 554-55 (1967). A plaintiff may overcome

judicial immunity in only two situations. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). First, a judge would not be immune from liability for "actions not taken in the judge's judicial capacity." *Id*. Second, a judge would "not [be] immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 11-12.

Judge Johnston remains shielded from liability by judicial immunity. Judge Johnston issued his Findings and Recommendations in his judicial capacity. *See Mireles*, 502 U.S. at 11. Judge Johnston possessed jurisdiction to issue his Findings and Recommendations on the three pending motions for summary judgment and Stewart's motion for a protective order. *See Mireles*, 502 U.S. at 11-12. Stewart's Motion for Investigation and Sanctions must be denied.

## ORDER

**IT IS ORDERED** that:

1. Stewart's Motion for Extension to File Objection to Findings and Recommendations (Doc. 106) is **GRANTED**.

2. Stewart's Revised Motion for Extension of Time to File Objection to Findings and Recommendations (Doc. 107) is **GRANTED**.

3. Judge Johnston's Findings and Recommendations (Doc. 104) is **ADOPTED IN PART** and **OVERRULED IN PART**.

4. State Defendants' Motion for Summary Judgment (Doc. 70) is **GRANTED**.

5. Stewart's Motion for Summary Judgment (Doc. 76) is **DENIED**.

6. CCA Defendants Motion for Summary Judgment (Doc. 80) is **GRANTED IN PART** and **DENIED IN PART**.

7. Stewart's Motion for Protective Order (Doc. 100) is **DENIED**.

8. Stewart's Motion for Investigation and Sanctions (Doc. 111) is **DENIED**.

9. CCA Defendants and Stewart shall file supplemental briefing, and accompanying affidavits, on whether CCA Defendants should be shielded from liability by having established a good faith defense to their actions to sanction Stewart under Rule 4235. CCA Defendants shall file their brief, and accompanying affidavits, within thirty days of the filing date of this order. Stewart shall file his brief, and accompanying affidavits, in response to CCA Defendants within thirty days of Stewart's receipt of CCA Defendants' brief.

DATED this 22nd day of February, 2019.

Brian Morris
United States District Court Judge