# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### GREAT FALLS DIVISION

| | |
|---|---|
| LAURENCE STEWART,<br><br>     Plaintiff,<br><br>vs.<br><br>MR. BERKEBILE, MS. ARNOLD,<br>MR. SPIEGLE, MR. WEAVER, MIKE<br>BATISTA, LORAINE WODNIK, and<br>COLLEEN AMBROSE,<br><br>     Defendants. | **CV-15-89-GF-BMM**<br><br><br><br>**ORDER** |

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Laurence Stewart ("Stewart") is currently serving a life sentence in the Montana prison system for several counts of attempted deliberate homicide. (Doc. 83 at 2.) The Montana Department of Corrections ("DOC") transferred Stewart from Montana State Prison ("MSP") to Crossroads Correctional Center ("CCC") on June 9, 2015. (*Id.* at 3.) Stewart filed an Informal Resolution Form at CCC on July 2, 2015. (Doc. 77-1 at 5.) The Informal Resolution Form provided as follows:

> I found a very interesting case: Brodheim v. Cry 584 F.3d 1262 (9th Cir. 2009). Please read this case. It states that an I/M cannot be

1

punished for hostile, abusive, threatening or sexual language in a grievance. This is the law. All of those grievances not processed and my "restriction" was all illegal. Now I know I can say that the warden is a little bitch who is too afraid to come to the high side and confront me like a man. He knows if he came to the high side, someone would probably punch him in that stupid fucking mouth of his. Anyone who follows the warden's illegal instructions is a cunt. A dirty diseased cunt, to be more accurate. To the warden, the grievance dept and Jovanovich, God finger fuck your assholes. I am only glad that I am not black or you racist sheep fucking hicks would really be giving me the shaft. Start doing your job and stop looking for reasons not to process grievances based solely on the fact that I called you mean names. Grow up.

(*Id.*) Stewart wrote the following in the "Action Requested" section of the Informal Resolution Form: "Please learn the fucking law and follow it. Stop being childish uneducated hicks and investigate issues even if they are presented to you in less than robotic way. ~~Cunt Cunt Cunt Cunt~~." (*Id.*)

CCC Grievance Coordinator Arnold issued a Disciplinary Infraction Report/Notice of Hearing ("Disciplinary Infraction Report") to Stewart on July 2, 2015. (*Id.* at 9.) The Disciplinary Infraction Report charged Stewart with violating Rule No. 4235. (*Id.*) Rule 4235 provides as follows: "Threatening any other person to include staff, volunteers, visitors, vendors, members of the public, etc. with bodily harm. Verbal or written statements or engaging in physical conduct causing fear in another person." (*Id.*) Arnold asserted that Stewart violated Rule 4235 when he submitted the Informal Resolution Form containing "obscene" language about MSP staff members. (*Id.*)

Defendant Weber conducted Stewart's disciplinary hearing on July 7, 2015. (Doc. 104 at 7.) Stewart defended his statements in the Informal Resolution Form at the hearing. (*Id.* at 7.) Stewart asserted that the statements did not constitute threats and that the First Amendment protects these statements in the Informal Resolution Form. (Doc. 77-1 at 12.) Weaver determined that Stewart had violated Rule 4235. (*Id.*) Weaver imposed a twenty-day disciplinary detention with time served. (*Id.*) Stewart filed a disciplinary appeal on July 7, 2015. (*Id.* at 14.) CCC affirmed Weaver's decision. (*Id.*)

CCC placed Stewart on a grievance restriction on July 10, 2015. (Doc. 104 at 8.) The notice of grievance restriction provides as follows:

> You were under a grievance restriction while at MSP. According to MSP Policy 3.3.3 when an inmate is transferred while on a grievance restriction, the new facility at which they arrive can decide to continue or discontinue that restriction. We have decided to continue that grievance restriction. This means that: You are on a grievance restriction until further notice; all grievances that you file will not be processed due to the restriction.

(Doc. 77-1 at 28.) CCC subsequently returned several unprocessed informal resolution forms to Stewart. (Doc. 104 at 8.) Stewart's Rule 4235 infraction increased his custody level to maximum. (*Id.*) DOC transferred Stewart back to MSP on August 25, 2015. (*Id.*)

Stewart filed his Complaint in this case on October 6, 2015. (Doc. 2.) Stewart ultimately alleges that CCA Defendants violated his right to free speech

and right to access the courts when they punished him pursuant to Rule 4235 and placed him on a grievance restriction. (*Id.* at 8.) Defendants Ambrose, Batista, and Wodnick ("State Defendants") filed a Motion for Summary Judgment on January 10, 2018. (Doc. 70.) Stewart filed a Motion for Summary Judgment on January 16, 2018. (Doc. 76.) Defendants Berkebile, Arnold, Spiegle, and Weaver ("CCA Defendants") filed a Motion for Summary Judgment on January 29, 2018. (Doc. 80.)

United States Magistrate Judge John Johnston issued Findings and Recommendations regarding the parties' motions on August 30, 2018. (Doc. 104.) Judge Johnston reasoned that the language found in Stewart's Informal Resolution Form constituted a criminal threat and, as such, was not protected by the First Amendment. (*Id.* at 11.) Judge Johnston further determined that State Defendants and CCA Defendants proved entitled to qualified immunity even if they violated Stewart's First Amendment rights. (*Id.* at 23.)

CCA Defendants filed an objection to the qualified immunity portion of Judge Johnston's Findings and Recommendations. (Doc. 105 at 2.) CCA Defendants observed well-settled Supreme Court precedent holding that they, as private prison guards, may not invoke qualified immunity in the same manner as afforded to government prison guards. (*Id.*) (citing *Richardson v. McKnight*, 521 U.S. 399, 412 (1997)). CCA Defendants noted that the Supreme Court left open in

*Richardson* the possibility that private prison employees may, however, rely on a "good-faith" defense. (*Id.* at 3) (citing *Richardson*, 521 U.S. at 413). CCA Defendants broadly asserted that they met all requirements of a good-faith defense. (*Id.* at 3.) CCA Defendants argued, therefore, that they were still entitled to summary judgment based on the undisputed facts of this case. (*Id.*)

The Court issued an order that adopted, in part, and overruled, in part, Judge Johnston's Findings and Recommendations on February 22, 2019. (Doc. 114.) The Court determined that no reasonable person could interpret the language in Stewart's Informal Resolution Form as a criminal threat and concluded that the First Amendment protected Stewart's statements. (*Id.* at 12-13.) The Court granted State Defendants' Motion for Summary Judgment (Doc. 70); denied Stewart's Motion for Summary Judgment (Doc. 76); and granted, in part, and denied, in part, CCA Defendants' Motion for Summary Judgment (Doc. 80). (*Id.* at 26.)

The Court agreed with CCA Defendants that their status as private prison guards did not entitle them to qualified immunity pursuant to *Richardson*. (*Id.* at 21-23.) The Court noted that CCA Defendants were entitled to assert a good-faith defense for having sanctioned Stewart under Rule 4235. (*Id.* at 23, 26.) It remained unclear whether CCA Defendants' good-faith defense shielded them from liability. (*Id.* at 23.) The Court deferred its ruling on the issue pending supplemental briefing. (*Id.* at 24.)

5

The Court ordered CCA Defendants and Stewart to file supplemental briefing on CCA Defendants' good-faith defense. (*Id*. at 26.) The Court ordered CCA Defendants to file their brief, and accompanying affidavits, within thirty days of its February 22, 2019 order. (*Id*.) The Court ordered Stewart to file his response brief, and accompanying affidavits, within thirty days of Stewart's receipt of CCA Defendants' brief. (*Id*.)

CCA Defendants filed a Motion for Extension of Time to File Supplemental Briefing on March 8, 2019. (Doc. 115.) The Court granted CCA Defendants' motion on March 11, 2019. (Doc. 116.) The Court ordered CCA Defendants to file their supplemental brief, and accompanying affidavits, on April 8, 2019. (*Id.* at 1-2.) The Court inadvertently ordered Stewart to file his supplemental brief, and accompanying affidavits, on April 8, 2019. (*Id*.) CCA Defendants filed their supplemental brief, and accompanying affidavits, on April 8, 2019. (Doc. 117.) Stewart likewise filed his supplemental brief, and accompanying affidavits, on April 8, 2019. (Doc. 118.) Stewart labeled his supplemental brief as a Motion for Reconsideration on the Grievance Restriction for CCA Defendants. (*Id*. at 1.)

The Court dismissed Stewart's motion for reconsideration without prejudice on April 17, 2019. (Doc. 119 at 4.) The Court notified Stewart that he needed to file a motion for leave to file a motion for reconsideration, and the Court must grant Stewart leave, before Stewart could file a motion for reconsideration. (*Id.* at

3.) The Court further provided Stewart with additional time to respond to CCA Defendants' April 8, 2019, supplemental brief. (*Id.* at 4.) The Court ordered Stewart to file a response brief, and accompanying affidavits, within thirty days of Stewart's receipt of the April 17, 2019, order. (*Id.* at 4.)

Stewart filed a motion for leave to file a motion for reconsideration on April 29, 2019. (Doc. 120.) The Court granted Stewart leave to file a motion for reconsideration on July 11, 2019. (Doc. 122.) Stewart filed his motion for reconsideration on July 22, 2019. (Doc. 123.) CCA Defendants filed their response in opposition to Stewart's motion for reconsideration on August 6, 2019. (Doc. 125.) Stewart did not file a response brief to CCA Defendants' April 8, 2019, supplemental brief.

## DISCUSSION

### I.   CCA Defendants' Motion for Summary Judgment

### A. Summary Judgment Standard

A party may move for summary judgment on all or part of a claim. Fed. R. Civ. P. 56(a). If no genuine dispute of material fact exists, then summary judgment is proper, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court will grant summary judgment where the documentary evidence produced by the parties only permits one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

A moving party, who does not carry the burden of proof at trial, carries the "initial burden of production" on a summary judgment motion. *Nissan Fire & Marine Insurance Company, LTD v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (2000). The movant may fulfill her initial burden of production in one of two ways. *Id.*, at 1106. The movant may produce "affirmative evidence negating an essential element of the nonmoving party's claim." *Id.* at 1103. The movant alternatively may show that the "nonmoving party did not have enough evidence to carry" her burden of proof at trial. *Id*. If the movant meets her burden of production, the nonmovant must produce evidence to support her claim. *Id*. Rule 56 mandates summary judgment where the nonmovant's production of evidence fails to create a genuine issue of material fact. *Id*. If the movant fails to meet her initial burden of production, then the nonmovant may defeat the motion for summary judgment without producing any evidence. *Id*.

**B. CCA Defendants' Good-Faith Defense**

CCA Defendants argue they are shielded from liability because they acted in good faith when they decided to discipline Stewart for the statements in his Informal Resolution Form. (Doc. 117 at 5.) Federal courts afford flexibility to prison officials who are trying to manage a volatile environment. *Sandin v. Conner*, 515 U.S. 472, 482 (1995). Prison officials have significant deference in their decisions regarding prison security. *Casey v. Lewis*, 4 F.3d 1516, 1521 (9th

Cir. 1993); *Pepperling v. Crist*, 678 F.2d 787, 789 (9th Cir. 1982). The Court will afford CCA Defendants deference in their decision to sanction Stewart as it considers this issue.

The Supreme Court has noted that there exists a "possibility that private defendants faced with § 1983 liability . . . could be entitled to an affirmative defense based on good faith and/or probable cause." *Richardson*, 521 U.S. at 413 (citing *Wyatt v. Cole*, 504 U.S. 158, 169 (1992)). The Ninth Circuit permits a private actor to assert a good-faith defense to a § 1983 claim. *Clement v. City of Glendale*, 518 F.3d 1090, 1096 (9th Cir. 2008). Courts have acknowledged that "good faith" lacks susceptibility to a precise definition. *Cook v. Brown*, No. 6:18-cv-01085-AA, 2019 WL 982384, at * 7 (D. Or. Feb. 28, 2019) (citing *In re Agric. Research & Tech. Grp.*, 916 F.2d 528, 536 (9th Cir. 1990); *In re Roco Corp.*, 701 F.2d 978, 984 (1st Cir. 1983)). It is generally understood, however, that principles of equity and fairness underpin the good-faith defense. *Cook*, 2019 WL 982384, at *7.

The Ninth Circuit in *Clement* determined that a private towing company's good-faith defense shielded it from § 1983 liability. The police department in *Clement* authorized a private towing company to tow Virginia Clement's vehicle from a hotel parking lot. 518 F.3d at 1092. Clement had filed a "planned non-operation" ("PNO") certificate with the California Department of Motor Vehicles.

*Id.* PNO certificates allow vehicle owners to avoid paying for registration and insurance if they do not drive on public roads or park in publicly accessible parking lots. *Id.* The police department ordered Clement's vehicle towed due to the vehicle's expired registration and the officer's mistaken belief that the owner had parked the vehicle in a publicly accessible parking lot. *Id.*

The Ninth Circuit reasoned that the private towing company's good-faith reliance on the officer's order shielded it from liability when it towed Clement's vehicle. *Clement*, 518 F.3d at 1097. The police department authorized the private towing company to tow Clement's car. *Id.* The private towing company acted on instructions from the police department. *Id.* The private towing company "did its best to follow the law" and "had no reason to suspect that there would be a constitutional challenge to its actions." *Id.* The Ninth Circuit affirmed the district court's grant of summary judgment to the private towing company. *Id.*

No other entity similarly authorized CCA Defendants' actions and CCA Defendants did not act on instructions from anyone else. CCA Defendants instead initiated disciplinary proceedings under Rule 4235 after they received Stewart's Informal Resolution Form. (Doc. 77-1 at 9.) CCA Defendants assert that they believed Stewart's threats were criminal in nature and believed they were following the applicable prison rules when they disciplined Stewart for violating Rule 4235. (Doc. 117 at 10.)

CCA Defendants argue that the undisputed facts demonstrate that they acted in good faith because reasonable minds differ regarding whether a threat qualifies as criminal. (*Id.*) The CCA Defendants note that Judge Johnston believed Stewart's statements constituted a criminal threat, but that this Court took a different view. (*Id.*) CCA Defendants argue that this disagreement demonstrates that reasonable minds differ on the issue. As a result, CCA Defendants contend that the Court must find that CCA Defendants acted in good faith when they disciplined Stewart for a Rule 4235 violation. (*Id.*)

The Court cannot conclude that CCA Defendants are entitled to summary judgment on this issue, even after affording them significant deference. CCA Defendants' argument highlights an issue of material fact: whether the CCA Defendants act in good faith when they disciplined Stewart for a Rule 4235 violation. That question presents a factual issue that renders summary judgment inappropriate. Fed. R. Civ. P. 56(c). The private towing company in *Clement* had no reason to suspect its actions would give rise to a constitutional challenge. CCA Defendants, as the operators of a private prison, likely had reasons to suspect that their actions would be challenged. These circumstances represent another factual issue that must be resolved.

CCA Defendants may have acted in good faith and their liability may be shielded by the good-faith defense. Questions of material fact regarding CCA

Defendants' good-faith defense exist at this point in the proceedings. These questions preclude this Court from granting summary judgment in their favor.

## I.      STEWART'S MOTION FOR RECONSIDERATION

Stewart filed a motion asking this Court to reconsider its order denying Stewart's Motion for Summary Judgment (Doc. 114 at 26.). (Doc. 124.) Stewart argued that CCA Defendants unlawfully retaliated against his exercise of free speech when they disciplined him under Rule 4235. (Doc. 76-1 at 1.) Stewart sets forth that same argument in his brief in support of his Motion for Reconsideration. (Doc. 124.) He again argues that CCA Defendants found he violated Rule 4235 with "retaliatory intent" and "malice." (Doc. 124 at 1.)

A motion for reconsideration serves the following purposes: (1) to raise previously unknown facts or law that are materially different from those previously presented to or applied by the Court; or (2) to present new material facts that emerged, or a change of law that occurred, after the Court entered its order. L.R. 7.3. Stewart's Motion for Reconsideration presents no new facts or law. Stewart simply rehashes the arguments that he previously presented to the Court in his Motion for Summary Judgment. (Docs. 76 & 124.) The Court deems it unnecessary to address Stewart's arguments and affirms its earlier decision denying Stewart's motion for summary judgment.

**ORDER**

Accordingly, **IT IS ORDERED** that CCA Defendants' Motion for Summary Judgment regarding their good-faith defense (Doc. 80) is **DENIED**. The Court's prior rulings regarding the other portions of CCA Defendants' Motion for Summary Judgment (Doc. 114) remain in full force and effect.

**IT IS FURTHER ORDERED** that Stewart's Motion for Reconsideration (Doc. 123) is **DENIED**.

DATED this 23rd day of September, 2019.

Brian Morris
United States District Court Judge